**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| WEST LICENSING CORPORATION and WEST PUBLISHING CORPORATION d/b/a WEST GROUP, | Civil No. 00-2645 (JRT/FLN) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| EASTLAW, LLC; REGSCAN, INC.; and ALLEN E. ERTEL, | |
| Defendants. | |

---

Eric C. Tostrud, LOCKRIDGE GRINDAL NAUEN P.L.L.P., 100 Washington Avenue South, Suite 2200, Minneapolis, MN, 55401, for plaintiffs.

John D. French, Ann Dunn Wessberg, and Amy M. Gernon, FAEGRE & BENSON, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, 55402-3901, for defendants.

Plaintiffs West Licensing Corporation and West Publishing Corporation (collectively, "West") bring this action against defendants alleging claims of trademark infringement, trademark dilution, false advertising, violation of the Anticybersquatting Consumer Protection Act, copyright infringement and other claims. According to West, defendants' use of the Eastlaw mark and eastlawonline.com domain name violate its WESTLAW mark and westlaw.com domain name.

FILED MAY 0 9 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

This matter is before the Court on West's motion for a preliminary injunction to restrain defendants from using the Eastlaw and eastlawonline.com names in connection with their online caselaw research service. Defendants move to dismiss West's complaint for insufficient service of process, lack of personal jurisdiction and improper venue. For the reasons that follow, the Court holds that service of process is insufficient to satisfy the relevant service of process provisions under either Pennsylvania or Minnesota law as incorporated by Rule 4 of the Federal Rules of Civil Procedure. Accordingly, defendants' motion to dismiss is granted and plaintiffs' complaint and motion for preliminary injunction are dismissed.

## BACKGROUND

West is one of the preeminent providers of legal information services in the country. It began publishing case reports in the 1870s and has continuously published legal materials since then. For over the last 25 years, it has also provided computerized legal research services through its proprietary WESTLAW dial-up service and more recently through westlaw.com, a web-based version of WESTLAW.

West uses its WESTLAW and westlaw.com marks extensively in the promotion and advertising of its legal publications and services. Consequently, these marks have achieved a reputation for excellence because consumers associate the marks with the high quality of West's services and merchandise. West also owns numerous copyright materials, including the Outline of the Law, an original organization of West's Digest Topics, which West created, arranged and coordinated to categorize case law by subject matter.

RegScan, a Pennsylvania corporation, has electronically published government-compliance regulation information, typically in the environmental, health and safety fields, since about 1987. In 1999, RegScan desired to expand its regulatory service to include computerized case law research services. After securing an agreement with VersusLaw, a case law provider, RegScan set out to name its new service. According to defendants, it settled on Eastlaw after defendant Ertel, quoting a line from a Rudyard Kipling poem, "East is East and West is West, and never the twain shall meet," suggested the name as a good way to distinguish itself from Westlaw.

In early October 2000, RegScan registered the domain name eastlawonline.com after discovering that eastlaw.com, RegScan's first choice, was already registered to Thomson Publishing. Around that same time, RegScan also registered the Eastlaw mark with the Patent and Trademark office.

Eastlaw was incorporated on October 27, 2000 and the eastlawonline.com website was launched in early November. Eastlaw first marketed its service to local attorneys in Lycoming County, Pennsylvania. Shortly thereafter, Eastlaw sent out an e-mail to each attorney in four major cities: Tallahassee, Florida; Nashville, Tennessee; Pittsburg, Pennsylvania; and Montgomery, Alabama. On November 17, 2000, an individual at the e-mail address of a.blatz@westgroup.com subscribed to Eastlaw's service online, but Eastlaw never processed the credit card that was given with the account.

On December 6, 2000, West filed this lawsuit. Specifically, West claims that defendants: 1) are infringing its trademarks by choosing names that come as close as

possible to copying the WESTLAW and westlaw.com marks; 2) are falsely advertising its capabilities by claiming it is the equivalent of West's FEDERAL REPORTER and NATIONAL REPORTER SYSTEM; 3) are falsely representing the capabilities of its "Good Case or Bad Case" service; and 3) are pirating West's copyrighted and proprietary Outline of the Law.

Since West filed its complaint and motion papers for a preliminary injunction, defendants stopped using the Eastlaw and eastlawonline.com names, removed any claim of equivalency to West's Reporter systems and claims of superiority regarding its "Good Case or Bad Case" service, and removed its expanded list of filter examples and is now using only a list of 17 topic categories.

Nonetheless, West maintains that an injunction is still necessary because there is, as yet, no enforceable agreement which guarantees that defendants will not resume their allegedly infringing conduct in the future.

## ANALYSIS

### 1. Defendants' Motion to Dismiss

After West filed its complaint and moved for a preliminary injunction to enjoin defendants' use of the Eastlaw and eastlawonline.com marks, defendants moved to dismiss the complaint on the basis of: 1) insufficient service of process; 2) lack of personal jurisdiction; and 3) improper venue. *See* Fed. R. Civ. P. 12(b)(2); 12(b)(5); and 12(b)(3). For the reasons that follow, the Court agrees with defendants that service was ineffective.

### A. Insufficient Service of Process

Rule 4 of the Federal Rules of Civil Procedure provides the methods for effecting service of process on individuals and corporations. According to Rule 4(e)(1), service upon defendant Ertel may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected . . . ." Fed. R. Civ. P. 4(e)(1).[1] Service upon defendants Eastlaw and RegScan may be effected "in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

According to Deputy Sheriff James W. Dorman ("Dorman"), he went to 605 West Fourth Street in Williamsport, Pennsylvania on December 15, 2000, to serve a summons and complaint on defendants Ertel and RegScan. Upon entering the building, he approached Nancy Crum ("Crum"), who sits at the front desk of the building and serves in a capacity analogous to a receptionist for the building.[2] Both Ertel and RegScan's offices are located in this building, however, it is undisputed that Crum works for Firetree, Ltd. She is not an employee of either Ertel or RegScan. According to Dorman, he asked Crum whether she would be willing to accept service on behalf of RegScan and

---

[1] There are additional ways for service upon an individual to be effected, however, they are not relevant to this case. *See* Fed. R. Civ. P. 4(e)(2).

[2] In her affidavit, Crum testified that her job duties include "greet[ing] guests at the front door, deliver[ing] faxes, answer[ing] the telephones for Firetree, Ltd., and answer[ing] the telephones for other businesses in the building when their lines are busy." Crum Aff. ¶ 2.

Ertel, to which Crum apparently agreed.[3] After asking for and obtaining Crum's name and title, Dorman left and attempted to serve Eastlaw at 800 West Fourth Street. Finding the building vacant, he returned to the first address and asked Crum if she would accept service for Eastlaw as well, which she did.

Rule 402 of the Pennsylvania Rules of Civil Procedure provides that process is served "by handing a copy . . . at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. Civ. P. 402(a)(2)(iii).[4] In this case, the question is whether Crum was "the person for the time being in charge" for purposes of Rules 402 and 424.

In order to be "in charge," the person must "either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 486 (3d Cir. 1993); *F.P. Woll & Co. v. Valiant Ins. Co.*, Civ. No. 99-465, 2000 WL 347955 at *2 (E.D. Pa. Mar. 21, 2000). First, Crum is not sufficiently connected to any of the named-defendants in this case. Crum is employed by Firetree, Ltd., and acts as

---

[3] Crum's version of the events differs from Dorman's. According to Crum, Dorman told Crum he had something for RegScan and Allen Ertel. Dorman then asked Crum for her full name and title, which she gave him, after which Dorman handed the two packages to her. Crum states that she did not know what was in the packages, but accepted them and delivered them to Ertel's mail basket. Crum Aff. ¶¶ 4-5. For purposes of this motion, the Court must accept Dorman's version of the facts.

[4] Rule 424(2) similarly provides that service on a corporation is effected by handing a copy to "the manager, clerk, or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity." Pa. R. Civ. P. 424(2).

the building receptionist. She does not work for Eastlaw, RegScan or Ertel. Indeed, Eastlaw is not even located in the building where Crum works.[5]

This case is strikingly similar to *Grand*. There, the Third Circuit, interpreting Rule 424(2), held that a receptionist, who was seated in the lobby of a building where the defendants were tenants and who was not employed by the defendants, but who nevertheless accepted the sealed envelope offered to her by the process server and undertook to forward it to defendants, did not qualify as a "person for the time being in charge." *Grand,* 988 F.2d at 485-86.

The Court also finds there is insufficient representation of authority. Pennsylvania courts consistently look for evidence of some express representation in the affidavit of service that the receptionist was "in charge." For instance in *Cintas Corp. v. Lee's Cleaning Servs. Inc.*, 700 A.2d 915 (Pa. 1997), the process server's affidavit states that the receptionist at defendant's place of business "'identified herself as the person in charge of the business at the aforesaid address, known as Lee's Cleaning Services, Inc.'" *Id.* at 920. Likewise, in *Hopkinson v. Hopkinson,* 470 A.2d 981 (Pa. Super. 1984) *overruled on other grounds by Sonder v. Sonder,* 549 A.2d 155, 169-71 (Pa. Super. 1984), the affidavit of service clearly states that the receptionist represented to the process server that she was "the person in charge." *Id.* at 986-87.

---

[5] Service of process on Eastlaw is also ineffective because 605 West Fourth Street is not Eastlaw's "regular place of business or activity." *See* Pa. R. Civ. P. 424(2). According to its incorporation papers, Eastlaw's offices are located at 1015 Mumma Road, Wormleysburg, Pennsylvania.

In this case, the affidavits of service do not contain similar representations.[6] Although Dorman states in a subsequent affidavit that Crum agreed to accept service on behalf of defendants, the Court finds this evidence insufficient to qualify as being "the person in charge" for purposes of Rule 402 or 424. The Court believes that a stronger representation of authority was required by Crum before Dorman could have a "substantial basis" for believing that she was authorized to accept service, particularly where, as here, Crum was seated at the receptionist desk of a building which houses multiple businesses. *Woll,* 2000 WL 347955 at *2. On these facts, the Court finds this case more similar to *Grand* than *Cintas* or *Hopkinson*. Service of process under Pennsylvania law is thus insufficient.

Service of process is also insufficient under Minnesota law.[7] In *Tullis v. Federated Mutual Ins. Co.,* 570 N.W.2d 309 (Minn. 1997), the Minnesota Supreme Court concluded that Rule 4.03, which allows "any other agent authorized impliedly . . . to receive service of summons," requires that the agent have actual authority. *Id.* at 313 ("Apparent or ostensible authority is not actual authority . . . . Actual authority is what is required under Rule 4.03"). In this case, Crum clearly did not have actual authority to

---

[6] The affidavits state only that Dorman served a copy of the summons and complaint by "handing a true and attested copy of same to Nancy Clerk [sic], Clerk, at 605 West 4th Street, Williamsport, PA., and by making known to her the contents thereof."

[7] The Court agrees with defendants that service of process under Rule 4(e)(1) may be effected by satisfying the requirements for service of process under either Pennsylvania or Minnesota law. *See* Fed. R. Civ. P. 4(e)(i) (service can be effected "pursuant to the law of the state in which the district court is located [Minnesota], **or** in which service is effected [Pennsylvania]") (emphasis added).

receive service of process. Thus, service was no more proper under Minnesota law than it was under Pennsylvania law.

Because service of process is ineffective, the Court need not resolve whether the Court lacks personal jurisdiction over defendants.[8] Further, West's motion for a preliminary injunction must be dismissed without prejudice. The Court notes, however, that had the Court ruled on the motion, it would have denied it. The grant of a preliminary injunction is an extraordinary remedy for which the movant carries the burden of proof on each of the factors set forth in *Dataphase Sys., Inc. v. C.L. Sys. Inc.* 640 F.2d 109, 113 (8th Cir. 1981). *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted"). In this case, the Court is simply not persuaded that West has any credible threat of irreparable harm. Since the time West filed its complaint and preliminary injunction motion, defendants have substantially, if not, totally stopped all of the conduct that West claimed warranted an injunction.

While defendants' voluntary cessation of the complained-of activity provides no guarantee that defendants will not "return to their old ways," the Court believes that any

---

[8] The Court notes that there are some serious questions as to whether jurisdiction is proper over defendants, particularly as to defendant Ertel. The record reveals that at the time this action was commenced, Ertel had only two remote and unrelated contacts with Minnesota. Although the record indicates that Ertel made contacts with the forum state which are directly related to this cause of action, the Court could not have considered those contacts for purposes of jurisdiction because they occurred after the complaint was filed. *See Multi-Tech Sys. Inc. v. VocalTec Communications,* 122 F. Supp. 2d 1046, 1051 (D. Minn. 2000) ("personal jurisdiction is determined by conduct up to an including the time the action commenced"). The Court makes no finding as to whether personal jurisdiction can be properly asserted over defendant Ertel, or any of the other defendants, should West re-file this case in Minnesota.

risk of recurrence is minimal. As the Court observed at the motion hearing and as counsel for both sides agreed, there is no legitimate business reason for defendants to return to the Eastlaw and eastlawonline.com names now that they have invested time and energy in launching their business under a different trademark and domain name.

It is true that a presumption of irreparable harm arises upon a showing that there is a likelihood of confusion between the marks at issue, *see General Mills v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987), but plaintiffs' likelihood of success on the merits on its trademark infringement claim is not readily apparent. While plaintiffs' claim is colorable, the Court does not find it to satisfy the threshold level of confusion necessary to impose injunctive relief. The degree of similarity between the marks is debatable, particularly in light of holdings in other cases involving arguably stronger claims of similarity than are present here. *See General Mills,* 824 F.2d at 625 (holding OATMEAL RAISIN CRISP and APPLE RAISIN CRISP not confusingly similar); *Duluth News-Tribune v. Mesabi Publishing Co,* 84 F.3d 1093 (8th Cir. 1996) (holding DULUTH NEWS-TRIBUNE and SATURDAY DAILY NEWS & TRIBUNE not confusingly similar). The relevant consumer market and degree of care likely taken by such consumers in purchasing legal information services also weigh against there being likely confusion between the marks. Therefore, even if the Court had jurisdiction over plaintiffs' motion, the Court would not have granted West the relief it seeks.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendants' motion to dismiss [Docket No. 10] is **GRANTED** and plaintiffs' complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE;**

2. Plaintiffs' motion for a preliminary injunction [Docket No. 3] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 9, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** May 9, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.